UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

REFUGIO NIETO, et al.,

           Plaintiffs,

    v.

CITY AND COUNTY OF SAN
FRANCISCO, et al.,

           Defendants.

Case No. 14-cv-03823 NC

**FINAL PRETRIAL ORDER**

Re: Dkt. Nos. 77, 78

The Court held a pretrial conference on February 3, 2016, and rules as follows:

## I.    STATEMENT OF THE CASE

The Court will read the following Statement of the Case to the jury:

> In this civil lawsuit, Plaintiffs Refugio and Elvira Nieto seek damages against San Francisco Police Officers Richard Schiff, Jason Sawyer, Roger Morse and Nathan Chew as a result of the shooting death of their adult son, Alejandro "Alex" Nieto. Specifically, Plaintiffs have alleged the following claims for relief: (1) Excessive force under the Fourth Amendment of the U.S. Constitution; (2) Violation of Plaintiffs' Civil Rights to Familial Relationship under the 14th Amendment of the U.S. Constitution; and (3) Wrongful death under California law. The Defendant Officers contend that they used reasonable force under the totality of the circumstance, did not violate any of Plaintiffs' rights, and are not liable to Plaintiffs.

These are the three claims to be tried in this case.  The Nietos' state law battery claim is DISMISSED upon Plaintiffs' motion.

Case No. 14-cv-03823 NC

## II.  BIFURCATION

Defendants moved to bifurcate the punitive damages evidence determination.  The Nietos do not object.  The parties are ordered to confer further regarding stipulations for Phase Two, the witness list, a proposed schedule, and time limits, and to file an update by February 17, 2016.

## III.  MOTIONS IN LIMINE

| Motion | Seeks To Exclude: | Grant/Deny |
|---|---|---|
| Plaintiff MIL #1 | Testimony of Defendant expert Dr. Karem.  Dkt. No. 77 at 1. | Grant in entirety under FRE 401, 403, 404(b) (see explanation below) |
| Plaintiff MIL #2 | Pre-incident observations of Justin Fritz and Timothy Isgitt.  Dkt. No. 77 at 2. | Deny under FRE 401 and 403 |
| Plaintiff MIL #3 | Letter, dated February 12, 2015 from DA George Gascon to Chief Gregory Suhr in which Gascon informed Suhr that he believed Nieto shooting was justified.  Dkt. No. 77 at 3. | Grant, unopposed |
| Plaintiff MIL #4 | Previous "police contacts concerning Hector Nieto" (Alex Nieto's brother); "incident reports in which Hector Nieto is a named suspect"; "bad acts allegedly committed by Hector Nieto."  Dkt. No. 77 at 4. | Grant as to documents; defer questioning until there is a clearer view of Hector Nieto's proposed testimony |
| Plaintiff MIL #5 | "[E]-mails and statements provided by Evan Snow."  Dkt. No. 77 at 4. | Deny as to what Snow saw under FRE 401 and 403; defer as to his character assessment of Alex |

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| | | Nieto |
|---|---|---|
| Plaintiff MIL #6 | "[R]esults of a San Francisco Police Department search on March 24, 2014 of a white Chevy Caprice and an iPad allegedly belonging to [Nieto]."  Dkt. No. 77 at 5. | Grant; and both parties are notified that any evidence that has not been produced to the other party and is not in the trial binders will be excluded |
| Plaintiff MIL #7 | "The toxicology report, which indicates that [Nieto] had THC and nicotine in his system" on the day of the incident.  Dkt. No. 77 at 5. | Grant under FRE 401, 403, and 404(b) |
| Plaintiff MIL #8 | "[A]ny mention of the restraining orders in which Nieto was the restrained person."  Dkt. No. 77 at 6. | Grant under FRE 401, 403, 404(b) |
| Plaintiff MIL #9 | Nieto's 5150 detentions as well as hospital records pertaining to Nieto.  Dkt. No. 77 at 7. | Grant under FRE 401 and 403 |
| Plaintiff MIL #10 | Testimony of Craig Fries in its entirety; Fries' testimony about where Nieto's "body posture," and the position of Nieto's arms and hands.  Dkt. No. 77 at 9. | Deny under FRE 702, 401, and 403 |
| | Testimony of Craig Fries that Antonio Theodore could not have seen what Theodore claims he saw.  Dkt. No. 77 at 9-10. | Grant under FRE 702, 401, and 403 |
| Defendant MIL #1 | All media articles "regarding the shooting or the investigation following the shooting."  Dkt. No. 78 at 2. | Grant under FRE 401 and 802 |
| Defendant MIL #2 | "Any testimony, documents or argument concerning other incidents involving the San Francisco Police Department," and particularly the officers involved.  Dkt. No. 78 at 2. | Grant under FRE 401,403, and 802 |

United States District Court
Northern District of California

| | | |
|---|---|---|
| Defendant MIL #3 | The autopsy and other photos of Nieto's body at the scene. Dkt. No. 78 at 3. | Deny, but parties must confer further to select non-cumulative images with reasonable limits under FRE 403 |
| Defendant MIL #4 | "Lay testimony regarding Nieto's mental health diagnosis." Dkt. No. 78 at 3. | Defer for foundational information; Plaintiffs are warned that testimony could open the door for Defendants to put in evidence of mental health issues |
| Defendant MIL #5 | Testimony or evidence concerning "any alleged future financial support" that Nieto could provide his parents. Dkt. No. 78 at 3-4. | Grant; the Plaintiff may not present evidence of special damages beyond burial expenses. *See* Response to Interrogatory #7, Baumgartner Dec. (Dkt. No. 79-5) at 3. |
| Defendant MIL #6 | "Information not known to parents regarding Nieto's activities." Dkt. No. 78 at 4. | Defer |
| Defendant MIL #7 | Plaintiffs' expert Roger Clark's opinion that the officers should have known that Nieto was pointing a taser and not a | Grant under FRE 702, 401, 403 |

| | | |
|---|---|---|
| | gun at them.  Dkt. No. 78 at 4. | |
| Defendant MIL #8 | Clark's testimony about pre-shooting tactics.  Dkt. No. 78 at 5. | Deny (see explanation below) |
| Defendant MIL #9 | Any "[t]estimony or opinion regarding the sufficiency or quality of the post-shooting investigation, including expert testimony."  Dkt. No. 78 at 6. | Grant (see explanation below) |
| Defendant MIL #10 | Clark's testimony that the taser was in the off position.  Dkt. No. 78 at 7. | Deny |
| Defendant MIL #11 | Testimony that the City will or must indemnify the officers.  Dkt. No. 78 at 7. | Grant under FRE 401 and 403 |
| Defendant MIL #12 | "Documents that do not have a witness to identify their source and author."  Dkt. No. 78 at 8. | Defer for foundational information |

### A.   Plaintiff's Motion in Limine #1 to Exclude Dr. Karem's Testimony

In opposition to the Nietos' Motion in Limine #1, Defendants cite to *Boyd v. City & Cty. of San Francisco*, 576 F.3d 938, 947 (9th Cir. 2009), in which the Ninth Circuit upheld the District Court's decision to admit Dr. Karem's testimony regarding the decedent's possible "suicide by cop" intent and corresponding acts that tended to support her theory.  The Ninth Circuit stated that "the admission of evidence in support of the suicide by cop theory falls within the large exception for otherwise inadmissible character evidence carved out in Rule 404(b).  To the extent that being shot by the police was [the decedent]'s plan, intent, or motive, the evidence supporting the theory of suicide by cop is admissible."

In *Boyd*, the court admitted facts that two weeks prior to his death, the Oakland police conducted an investigative stop on the decedent's vehicle and "discovered rap lyrics along with a newspaper article regarding the murder of an Oakland police officer.  The rap lyrics, which [the decedent] acknowledged were his, advocated prostitution and the murder of police officers."  *Id.* at 942.  Three days before the shooting, Oakland police

United States District Court
Northern District of California

investigated the decedent for reckless driving.  *Id.*  During the stop, the decedent demonstrated that he was able to get down on the ground without assistance despite having prosthetic legs, and  "struggled with the officers during handcuffing, repeatedly screaming at them to 'kill me,' and calling them 'filthy white racists.'"  *Id.*  These facts were introduced along with Dr. Karem's testimony as a theory to explain the decedent's intent on the day of the shooting and therefore qualified under Federal Rule of Evidence 404(b) for an exception to the Federal Rule of Evidence's prohibition on character evidence.

However, *Boyd* is distinguishable because the prior acts by the decedent in *Boyd* were not temporally remote and because Dr. Karem proposed one coherent theory to explain the decedent's intent during his interaction with the police.  In *Boyd*, the defendants introduced evidence that the decedent made statements only days before the interaction that he wanted to die.  Here, Defendants seek to introduce evidence of medical records from 2011, three years prior to the incident.  In *Boyd*, the statements were directly relevant to a "suicide by cop" theory; here, a diagnosis of paranoid schizophrenia is not specific enough to constitute evidence of Alex Nieto's intent on the day of the shooting.

Dr. Karem in *Boyd* propounded one specific theory of "suicide by cop" that was consistent with a pattern of behavior leading to the day of the shooting.  Here, Dr. Karem states that she cannot say that Nieto intended "suicide by cop" because she does not have enough information, and instead suggests that his actions could be explained by either marijuana-induced psychosis (of which there is no evidence other than THC found in Nieto's autopsy report) or by general psychosis because he had been diagnosed with schizophrenia years prior to the incident.

In addition to failing to qualify for an exception under Federal Rule of Evidence 404(b), Dr. Karem's testimony fails under  Federal Rule of Evidence 403's balancing test, which permits the Court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Under *Graham v. Connor*, 490 U.S. 386, 396 (1989), the three factors to assess

United States District Court
Northern District of California

1    whether the police engaged in unreasonable force are: (1) the severity of the suspect's

2    alleged crime; (2) the threat posed by the suspect to the officers and the public; and (3)

3    whether the suspect was actively resisting or evading arrest. "In the Ninth Circuit, 'threat'

4    is "the most important single element of the three specific *Graham* factors." *De Contreras*

5    *v. City of Rialto*, 894 F. Supp. 2d 1238, 1250 (C.D. Cal. 2012) (internal citations and

6    quotations omitted).

7         Here, Dr. Karem's testimony is not probative to the inquiry under the *Graham* factors

8    and therefore is excluded under Federal Rule of Evidence 401.  Even if the testimony of

9    Dr. Karem is relevant, it fails under Federal Rule of Evidence 403's balancing test because

10   any relevance is substantially outweighed by danger of unfair prejudice and jury

11   confusion.

12        Finally, Dr. Karem's proposed testimony in this case does not pass muster under

13   *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 597 (1993).  The Federal Rules of

14   Evidence allow expert testimony that will assist a trier of fact in understanding the

15   evidence or in determining a fact in issue, so long as "(1) the testimony is based upon

16   sufficient facts or data, (2) the testimony is the product of reliable principles and methods,

17   and (3) the witness has applied the principles and methods reliably to the facts of the case."

18   Fed. R. Evid. 702.  It is the Court's responsibility to act as a "gatekeeper" by ensuring

19   "that an expert's testimony both rests on a reliable foundation and is relevant to the task at

20   hand." *Daubert*, 509 U.S. at 597.  In making this determination, the Court must make "a

21   preliminary assessment of whether the reasoning or methodology underlying the testimony

22   is scientifically valid and . . . whether that reasoning or methodology properly can be

23   applied to the facts in issue." *Id.* at 592–93; *Boyd*, 576 F.3d at 945.

24        Dr. Karem's theory that Nieto suffered from marijuana-induced psychosis is not

25   grounded in a methodology that "both rests on a reliable foundation and is relevant to the

26   task at hand" under *Daubert*.  509 U.S. at 597.  Dr. Karem provides no foundation for her

27   theory of marijuana-induced psychosis other than that Nieto "was diagnosed with

28   marijuana dependence in February 2011.  It is possible that this diagnosis also was present

Case No. <u>14-cv-03823 NC</u>                7

1    on the date of the incident." Dkt. No. 106 at 2.  Dr. Karem's report goes on to state,

2    "[h]owever, there is not enough information available to make that determination to a

3    reasonable degree of medical certainty."  *Id*.

4        Furthermore, Dr. Karem's theories that Nieto acted in keeping with the character of

5    a mentally ill person rely on inadmissible character evidence and are not "based upon

6    sufficient facts or data."  *Id*.   Because Dr. Karem's testimony relies on impermissible

7    character evidence and does not provide one clear rationale to explain Nieto's intent or

8    motive on the day of the incident, it is additionally excluded under Rule 702 and *Daubert*.

9    **B.    Defendants' Motions In Limine #7-10 To Exclude The Testimony Of**
         **Richard Clark**

10

11       Defendants' motions in limine #8 and #9 seek to exclude Richard Clark's testimony

12   regarding the pre-shooting tactics of the police officers and the post-shooting investigation.

13   Dkt. No. 78 at 4-7.  The Nietos argue that because Clark expounded on his theory

14   regarding the pre-shooting conduct in his deposition there is no unfair surprise to

15   Defendants, and that Clark's testimony about both the pre-shooting and post-shooting

16   conduct is relevant, more probative than prejudicial, and passes muster under *Daubert*.

17       **1.    Testimony Regarding Pre-Shooting Conduct**

18       In his expert report, Clark states that the "officers failed to follow the proper tactical

19   approach, for this set of facts.  For example, when first observed, Sergeant Sawyer

20   instructed Officer Schiff to drive closer and closed the distance between them rather than

21   stop and take cover.  Consequently, they squandered the time and distance available to

22   them to properly encounter and assess the possible threat posed by Mr. Nieto."  Dkt. No.

23   92-1 at 9.  Clark's report also states that police officers generally know "that there are a

24   number of benign possibilities for a concealed carry – including retired police officers,

25   active police officers, undercover officers, CCW permits, etc.  No one had been threatened

26   with a weapon or injured.  There was no report of violence.  Mr. Nieto did not match the

27   description of a known wanted suspect.  To assume him to be a criminal suspect without

28   further investigation was unjustified, dangerous and irresponsible."  *Id*. at 11.

United States District Court
Northern District of California

1    Clark's testimony regarding the pre-shooting conduct of the police is relevant to the

2    question of whether the officers used reasonable force in the encounter with Nieto.

3    However, the Nietos are warned that Clark may not testify to facts or theories not included

4    in his expert report.  *See* Fed. R. Civ. P. 26(a)(2)(B)(i) (requiring the written expert report

5    to contain "a complete statement of all opinions the witness will express and the basis and

6    reasons for them").  Therefore, Defendants' motion to exclude all testimony regarding the

7    pre-shooting conduct is denied, but Clark's testimony is limited to the content of his expert

8    report.

9                   **2.    Testimony Regarding The Post-Shooting Conduct**

10   Clark states in his expert report that "it cannot be overstated that here is no physical

11   evidence at the scene of the shooting that Mr. Nieto discharged his Taser at anytime he

12   was shot.  The blast doors were not recovered.  Most significantly, the AFIDS were not

13   noted, photographed and/or recovered.  This is physical proof supporting Mr. Theordore's

14   statement that the Taser was not in Mr. Nieto's hands and was not discharged when he was

15   shot."  Dkt. No. 92-1 at 10.  This is a recitation of facts that the Nietos wish to use to

16   corroborate their version of the shooting.  However, it requires no expertise to state these

17   facts.

18   Moreover, Plaintiffs' counsel stated at the pretrial conference that Clark does not

19   intend to testify about any deficit or deficiency in the post-shooting investigation, but

20   instead to state that a competent post-shooting investigation did not produce key pieces of

21   evidence to support Defendants' version of events in which Nieto fired his taser.

22   Therefore, Clark's testimony is simply not required on this topic because he does not offer

23   expertise on these facts.  Defendants' motion to exclude his testimony on this topic is

24   therefore granted under Federal Rules of Civil Procedure 702, 401, and 403.

25   **IV.   JURY SELECTION PROCESS AND TRIAL SCHEDULE**

26   Jury trial will commence on March 1, 2016 at 8:30 a.m. in Courtroom D on the 15th

27   floor of the San Francisco courthouse at 450 Golden Gate Avenue.  The jury panel will be

28   brought in around 9:00 a.m. at which point the Court will voir dire the jury.  Each side will

have approximately twenty minutes to voir dire the jury when the Court is done.  Each party may exercise three peremptory challenges, and the Court will empanel a jury of eight, with no alternates.

The parties will have 15 hours per side for trial.  The jury day will be 9:00 a.m. to 4:00 p.m., with breaks around 10:15 a.m. and 2:15 p.m. and a 45 minute lunch break around noon, with the exception of Tuesday, March 1, when the Court will not break for lunch until the jury is seated.

Defendants' experts Mr. Chiles and Mr. Fries will testify on March 7, 2016, and the parties are to confer further regarding scheduling around these witnesses' availability and update the Court by February 17, 2016.

## V.   JURY INSTRUCTIONS, VERDICT FORMS, AMENDED WITNESS AND EXHIBIT LISTS

The parties are ordered to confer further and submit the following materials to the Court by February 17, 2016:

- Amended witness lists
- Amended exhibit lists, including joint exhibits
- Fact stipulations
- Transcripts of any audio recordings to be played at trial
- Information regarding a certified interpreter if either party chooses to provide one for trial, as well as any objections from the other side to the credentials of the chosen interpreter
- All motions to seal trial exhibits
- A plan for the punitive damage bifurcated phase of trial
- Joint proposed jury instructions

## VI.   SETTLEMENT/ADR REFFERAL

The parties were given the opportunity to request a further settlement conference with Magistrate Judge James by February 5, 2016.  The parties may be charged costs for jury fees if they settle after the jury is summoned.

United States District Court
Northern District of California

United States District Court
Northern District of California

1

    **IT IS SO ORDERED.**

2

3   Dated:  February 9, 2016            _____

4                                 NATHANAEL M. COUSINS
                               United States Magistrate Judge

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 14-cv-03823 NC         11